**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Accentuated Luxury LLC, and DeVon Sykes | ) ) ) | No. 25 C 4394 |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| | ) | |
| Mielle Organics LLC, and Melvin and Monique Rodriguez, | ) ) ) | |
| *Defendants*. | | |

**<u>MEMORANDUM OPINION & ORDER</u>**

On January 23, 2026, Accentuated Luxury LLC and its owner DeVon Sykes ("the Plaintiffs") sued Mielle Organics LLC, Melven Rodriguez, and Monique Rodriguez ("the Defendants") alleging claims of breach of contract, accounts stated, detrimental reliance, unjust enrichment and quantum meruit. (Second Amended Complaint, Dkt. 42 ¶ 11). The Court previously dismissed the Plaintiffs' First Amended Complaint on December 5, 2025. (Dkt. 33). Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") under Rule 12(b)(6). (Dkt. 43). For the reasons listed below the Court grants the Defendants' Motion to Dismiss for Counts III and IV, as well as Count VI in part, and denies for Counts I, II, V, VI, and VII.

**<u>BACKGROUND</u>**

The following facts are set forth in the Amended Complaint, which the Court accepts as true for purposes of a motion to dismiss. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

The Plaintiffs began their professional relationship with the Defendants in May of 2019. (Dkt. 42 ¶ 30). The Plaintiffs completed various design projects for the Defendants on a recurring basis and received payment from Defendants for projects outside the scope of this litigation. (*Id.* ¶ 107–08). At the center of the SAC is work that Plaintiffs completed for the Defendants starting in June 2021 until the relationship was terminated by the Defendants in August 2023. (*Id.* ¶¶ 31–34). The time span includes three separate projects: Mielle Headquarters ("Project A"), St. John Home ("Project B"), and Florida Home ("Project C"). (*Id.*)

Defendants Melvin Rodríguez and Monique Rodríguez approached the Plaintiffs to perform decorative and design services for their St. John home. (*Id.* ¶ 45). The Plaintiffs, through Sykes, agreed to perform services for the Defendants on June 4, 2021. (*Id.* ¶ 46). Pursuant to the terms of Project A, Plaintiffs agreed to facilitate the design for the home salon and purchase certain fixtures for the Defendants' St. John Home. (*Id.* ¶ 47). Plaintiffs would meet with the Rodríguezes to discuss design outlines, floor plans, design elements, materials, timing, measurements, fabrics and project details. (*Id.* ¶ 51).

In exchange, Defendants agreed to pay the Plaintiffs a retainer of $10,000 per month and would reimburse for travel, lodging, materials, fabrics and other necessary items. (*Id.* ¶¶ 48, 50). For larger items, Sykes got the Defendants' approval, but for smaller purchases she retained creative control. (*Id.* ¶ 52). After purchasing materials, fabrics, furniture or other items for each of the projects, Sykes would submit invoices and the Defendants would pay the Plaintiffs throughout the duration of the projects. (*Id.* ¶¶ 53, 55). Throughout the duration of Project A, the Defendants accepted Plaintiffs' services, designs and deliverables. (*Id.* ¶ 64). Plaintiffs allege Defendants still owe $3,731.96 for the work on Project A. (*Id.* ¶¶ 56–58).

2

The Rodríguezes also approached the Plaintiffs to perform decorative and design services for their Florida Home ("Project B"). (*Id.* ¶ 71). The Plaintiffs agreed to perform design services for Project B on June 4, 2021. (*Id.* ¶ 74). In Project B, Plaintiffs agreed to design elements, purchase products, furnishings, and materials, and perform project management duties. (*Id.* ¶ 75). In exchange, the Defendants again agreed to pay the Plaintiffs a retainer of $10,000 per month along with reimbursements for travel, lodging, materials, fabrics and other necessary items. (*Id.* ¶¶ 75–76). Plaintiffs submitted invoices for taxes paid on items for Project B and the Defendants would pay the invoices. (*Id.* ¶¶ 78–79). Throughout Project B, the Defendants accepted Plaintiffs' services, designs, and deliverables. (*Id.* ¶ 81). Sykes received a year of paid retainers. (*Id.* ¶ 80). Plaintiffs allege Defendants owe an outstanding balance of $81,168.35. (*Id.* ¶¶ 82–83).

On March 23, 2023, Plaintiffs were contacted by an employee of the Defendants to perform design services for Mielle ("Project C") for an event on March 28, 2023. (*Id.* ¶¶ 88–89). On the same day, Melvin Rodriguez reached out to Plaintiffs to discuss the items needed for the event. (*Id.* ¶ 94). Plaintiff agreed to bring in painters and purchase new décor to refresh three bathrooms as well as the waiting area. (*Id.* ¶ 95). Again, the Defendants paid Plaintiffs a $10,000 monthly retainer. (*Id.* ¶ 97). Plaintiffs, relying on their regular course of dealings with the Defendants, would pay for materials up front and submit invoices for reimbursement to the Rodríguezes. (*Id.* ¶¶ 99–100). Defendants usually paid Plaintiffs for work on behalf of Mielle through Mielle checks. (*Id.* ¶ 98). Upon the completion of the Mielle project on March 28, 2023, Defendants owed an outstanding balance of $1,607.84. (*Id.* ¶ 101).

On August 11, 2023, Melvin Rodriguez terminated the business relationship between the Plaintiffs and Defendants. (*Id.* ¶ 59). On the same day, Rodriguez messaged Sykes "whatever money is old [sic] to you please send me proof of what's owed and I will be happy to pay what's

owed." (*Id.* ¶ 61; *See* Dkt. 42-6). Plaintiffs did not receive payment for the remaining balances on each of the projects after the termination of their business relationship. (Dkt. 42 ¶ 65). Plaintiff contacted the Defendants and requested payment for the outstanding balances on March 27, 2024, April 4, 2024, April 16, 2024, and May 28, 2024. (*Id.* ¶¶ 37–41). The Defendants did not respond. (*Id.*) As a result, Plaintiffs paid up front costs for purchases, materials, travel, lodging and taxes without compensation or reimbursement. (*Id.* ¶ 67).

## **LEGAL STANDARD**

A Rule 12(b)(6) motion tests the sufficiency of a complaint rather than the case's merits or the merits of any affirmative defense. *See Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. Dismissal is proper only if it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521 (7th Cir. 2003).

## **DISCUSSION**

Plaintiffs bring five claims against Defendants in their Second Amended Complaint: three claims for breach of implied contract in fact (corresponding to each of the three projects), an accounts stated claim, and a detrimental reliance claim. In the alternative to the three counts of implied contract, Plaintiffs offer two additional counts: Count VI, unjust enrichment, and Count VII, quantum meruit. The Court reviewed Plaintiffs' First Amended Complaint and dismissed it for want of subject matter jurisdiction but did not address Defendant's 12(b)(6) arguments. (Dkt. 33). Now, the Court will address the merits of each count in turn.

## I. **Counts I-III: Breach of Contracts Implied in Fact**

Plaintiffs assert three counts of breach of contract implied in fact, alleging the Defendants failed to reimburse them for expenses paid by the Plaintiffs over the course of three design projects Project A, Project B, and Project C. To establish a breach of contract under Illinois law, a plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *See Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178 (Ill. App. Ct. 2016). A contract can be either express or implied-in-fact. *See BMO Harris Bank, N.A. v. Porter*, 106 N.E.3d 411 (Ill. App. Ct. 2018); *Marcatante v. City of Chicago*, Ill., 657 F.3d 433, 440 (7th Cir. 2011). A valid contract requires "offer, acceptance, and consideration," and "there must also be mutual assent as to the contract's terms." *Harris v. W6LS, Inc.*, 171 F.4th 957, 963 (7th Cir. 2026).

An implied-in-fact contract must contain all the elements of an express contract, but unlike an express contract, its terms are inferred from the conduct of the parties. *Marcatante*, 657 F.3d at

440. "An implied-in-fact contract is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022) (citation modified).

Regarding all three alleged contracts, the Defendants argue dismissal is proper because the Plaintiffs fail to allege mutual assent to enter into an agreement. (Dkt. 43 at 4). It is black letter law that "[i]n order for there to be a contract between parties there must be a meeting of the minds or mutual assent as to the terms of the contract." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) (citation omitted). Mutual assent is derived from the actions of the parties; it is not enough for one party to subjectively believe a contract is formed. *See Miksis v. Evanston Twp. High Sch. Dist. # 202*, 235 F. Supp. 3d 960, 996 (N.D. Ill. 2017), *as amended* (Feb. 2, 2017) (party's subjective belief that community college classes were part of the settlement agreement was "not sufficient to establish a meeting of the minds").

Due to the circumstances of each alleged contract, the Court will assess them separately.

## A. Count I: Project A (St. John House)

First, the Plaintiffs must establish the existence of a valid and enforceable contract. Plaintiffs allege, through Sykes, they agreed to the Defendants' offer to perform decorative and design services for the Defendants' St. John Home. (Dkt. 42 ¶ 45). Plaintiffs accepted this project on June 4, 2021, and completed their portion of the project several months later. (*Id.* ¶ 46, 56). In exchange, Plaintiffs claim, the Defendants agreed to compensate them through a $10,000 per month stipend and through a series of reimbursements for travel, lodging and purchases made for the design. (*Id.* ¶ 47). This is sufficient to allege offer, acceptance, and consideration. *See Harris,* 2026 WL 878446, at *4.

Additionally, mutual assent may be reasonably inferred from the allegations in the SAC. The Plaintiffs allege Sykes met with the Defendants to discuss the details of the project. (*Id.* ¶ 51). Specifically, as it related to reimbursements, Plaintiffs allege they would submit invoices and the Defendants "would pay them." (*Id.* ¶¶ 53, 55). Further, Defendant Rodriguez messaged Sykes offering to pay whatever money was owed. (*Id.* ¶ 61; *See* Dkt. 42-6). The Plaintiffs also note that Defendants reimbursed their expenses over the course of their business relationship. (Dkt. 42-3 at 2; *See* Dkt. 49 at 4). The Defendants' actions, as alleged by the Plaintiffs, plausibly suggest more than a unilateral expectation for reimbursement on the part of the Plaintiffs. The Defense attempts to distinguish between these reimbursements and those for travel costs, which they assert they never assented to. But it is reasonable for a design project in a third location to require travel to said location, and Plaintiffs plead as such. While subsequent discovery may support Defendants' position, the Plaintiffs have met their burden at this stage. As such, the facts alleged are adequate to establish an enforceable contract implied in fact for Project A.

The Plaintiffs adequately pled the remainder of the breach of contract claim elements. First they assert they completed the St. John project and thus established substantial performance. (Dkt. 42 ¶¶ 56–58). Next, they claim Defendants failed to reimburse an outstanding balance of $3,731.96. *Id.* This is enough to allege a breach and resulting damages. The Plaintiffs have plausibly alleged the elements of a breach of an implied contract in fact regarding "Project A." Accordingly, the Court denies Defendants' motion to dismiss for Count I.

### B. Count II: Project B (Florida House)

Again, for the Florida House project, the Plaintiffs must establish that there is an enforceable contract. Plaintiffs allege that Sykes agreed to the Defendants' request to perform decorative and design services for the Defendants' Florida Home after a discussion on June 4,

2021. (*Id.* ¶¶ 71, 74). Plaintiffs agreed to design elements, purchase products, furnishings, materials and perform project management duties in exchange for a retainer of $10,000 a month, and reimbursement for travel, lodging, and necessary items. (*Id.* ¶¶ 75, 76). This is again sufficient to allege offer, acceptance, and consideration. For the same reasons addressed above mutual assent is reasonably inferred by the Plaintiffs allegations regarding Project B. Plaintiffs assert they submitted invoices to the Defendant and the Defendant "would pay them," including some invoices for travel expenses from May 2021. (Dkt. 42-3 at 2; *See* Dkt. 49 at 4). Further Defendant Mr. Rodriguez's message to Sykes that he would pay whatever money was still owed plausibly refers to all three alleged outstanding balances, including Project B. (Dkt. 42 ¶ 61). As explained above, Plaintiffs met their burden in pleading mutual assent.

Unlike Contract A, however, the Plaintiffs do not allege an end date for the Florida House project. (*See* Dkt. 42 ¶¶ 70–86). The Defendant argues Count II violates the Statute of Frauds and is therefore unenforceable because the purported obligations could not have been fulfilled in one year. (Dkt. 43 at 5-6). Illinois courts consistently hold that the Statute of Frauds is a defense to the enforcement of implied contracts. *See Telebrands Corp. v. My Pillow, Inc.*, 2020 WL 291386, at *4 (N.D. Ill. Jan. 21, 2020) (citations omitted). The Illinois Statute of Frauds "precludes enforcement of a services contract that cannot be performed within a year unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith." *Fischer v. First Chicago Cap. Markets, Inc.*, 195 F.3d 279, 283 (7th Cir. 1999).

Here Plaintiffs allege an implied contract in fact and fail to attach a written contract. Without an agreement in writing, Plaintiffs are then tasked with establishing that alleged Project B could be performed within a year of the purported contract. The facts pleaded in the SAC

regarding Project B do not indicate it would be implausible for Project B to be completed within a year. (*See* Dkt. 42 ¶¶ 70–86); *See Carcharadon, LLC v. Ascend Robotics, LLC, 2023 WL 3320286, at *9* (N.D. Ill. May 9, 2023) (holding Illinois Statute of Frauds does not bar a claim when nothing suggests the contract could not have been completed within a year). The Plaintiffs' obligations—to design elements, purchase products, furnishings, materials and perform project management—do not on their face suggest they could not be completed within a year. (Id. ¶ 75). The Defendants point out that Plaintiffs' exhibit detailing the alleged outstanding balance include sums that span the course of 2021 into 2023. Indeed, recovery on all of these claims—should the Plaintiffs win the day down the line in this litigation—may be barred by the Statute of Frauds. Yet the test for determining whether the Statute of Frauds applies to a contract is "whether the contract is capable of being performed within one year of its formation, not whether such occurrence is *likely*." *See Carcharadon, LLC*, 2023 WL 3320286, at *9 (emphasis added).

A plaintiff generally need not anticipate affirmative defenses, like the Statute of Frauds, in drafting a complaint, courts will grant a motion to dismiss on this basis "only if it is plain from the face of the complaint that the defense is meritorious." *See Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, 2018 WL 1394032, at *5 (N.D. Ill. Mar. 20, 2018) (citing *Hyson USA, Inc. v. Hyson 2U*, Ltd., 821 F.3d 935, 939 (7th Cir. 2016)). On these allegations, and granting the Plaintiffs their due inferences, the Statute of Frauds does not bar this claim because it is not plainly meritorious, and Project B is therefore alleged as enforceable.

The Plaintiffs again sufficiently pled the remainder of the breach of contract claim elements. First, they claim they traveled around the country performing their obligations under the contract from 2021 until the relationship was terminated in 2023. (Dkt. 42 ¶¶ 82-83; Dkt. 49 at 8). Next, they claim Defendants failed to reimburse an outstanding balance of $81,168.35. (*Id.*) This

is sufficient to allege a breach and resulting damages. The Court denies Defendants' motion to dismiss for Count II.

### C. Count III: Project C (Mielle Headquarters)

The Plaintiffs must again first establish the Mielle Headquarters project, Project C, is an enforceable contract. Plaintiffs allege they were contacted by an employee of the Defendants to provide design services for Mielle Headquarters. (Dkt. 42 ¶¶ 88, 94). Plaintiffs claim they agreed to refresh three restrooms, bring in painters and purchase new décor in exchange for a $10,000 monthly retainer. (*Id.* ¶ 97). Soon after the agreement, Defendant Melvin Rodriguez messaged Sykes to discuss what items would be necessary for the event. The Plaintiffs alleged sufficient facts to establish an offer, acceptance and consideration concerning Project C.

Plaintiffs, however, fail to establish mutual assent regarding an agreement for the Defendants, particularly Mielle Organics, LLC to reimburse for invoiced expenses. Notably absent from Count III, unlike the first two counts, is an allegation that the Plaintiffs would submit their invoices to the Defendants and *they would pay them*. (*See id.* ¶¶ 53, 55, 79) (emphasis added). Further, the Plaintiffs do not allege the Defendants agreed to reimburse for this particular project; instead, they assert they submitted the invoices without payment from the Defendants. (*Id.* ¶¶ 99–100). Unlike Project A and Project B, Plaintiffs allege being "usually" paid by Mielle Organics, LLC, for the services through Mielle checks, not the Rodríguezes directly, complicating Plaintiffs' ability to rely on the regular course of dealing backing up the other counts. (*Id.* ¶ 98). Absent a demonstrated history of paid invoices with Mielle Organics LLC, Plaintiffs have not plausibly alleged mutual assent. The allegations do not create a reasonable inference that the Defendants, particularly Mielle Organics, LLC, agreed or acted as if they intended to reimburse the Plaintiffs for their purchases under Project C. Instead, the SAC reflects a subjective belief by the Plaintiffs

that the Defendants would provide reimbursement. *See Dynegy Mktg. & Trade*, 648 F.3d at 515 (7th Cir. 2011) ("Unilateral 'understandings' are not enough to give rise to an enforceable oral contract in Illinois."). Accordingly, Plaintiffs have not sufficiently alleged an enforceable contract for Project C and Count III is dismissed without prejudice.

## II.    Count IV: Account Stated

Next, Plaintiffs allege a claim for "accounts stated." (Dkt. 42 ¶¶ 106–12). In Illinois, an account stated "has been defined as an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the payment of such balance." *W.E. Erickson Const., Inc. v. Cong.-Kenilworth Corp.*, 477 N.E.2d 513, 519 (Ill. App. Ct. 1985), *aff'd and remanded*, 503 N.E.2d 233 (1986). A statement of account sent by one party to another that is retained by the latter beyond a reasonable time without objection, constitutes an acknowledgment and recognition by the latter of the correctness of the account; taken together with a promise, express or implied, for the payment of such balance, and an account stated is established. *See W.E. Erickson Construction,* 477 N.E.2d 513, 520 (Ill. App. Ct. 1985). The Defendants contend Plaintiffs have not and cannot establish the account stated is accurate or correct. (Dkt. 43 at 8). Plaintiffs assert the Defendants failed to respond to their requests for payment, and in doing so, acknowledged its correctness. (Dkt. 49 at 10 (citing Dkt. 42 ¶ 111)).

The Plaintiffs and Defendants participated in a series of transactions. (Dkt. 42 ¶¶ 30, 107–08). Yet Defendants openly objected to the balance stated. While Defendant Melvin Rodriguez communicated to the Plaintiffs via Sykes that he would pay "what was owed," he offered no indication that Plaintiffs' calculations were decisively correct. (*Id*. ¶ 61). Further, Plaintiffs allege a series of travel expenses that predate any alleged agreement for reimbursement. Plaintiffs allege

11

Contract A and Contract B were entered into on June 4, 2021, but include expenses for at least five flights throughout May 2021. *Id*. The meeting of the minds upon the correctness of an account is usually the result of one party rendering a statement of account to which the other party acquiesces. *See LaGrange Metal Products v. Pettibone Mulliken Corporation*, 436 N.E.2d 645 (Ill. App. Ct. 1982). Here, the Plaintiffs fail to allege the Defendants, or the Plaintiffs for that matter, agreed upon the correctness of the account. As such, Count IV is dismissed without prejudice.

### III.    Count V: Detrimental Reliance

The Plaintiffs allege a claim for detrimental reliance or, as it is more commonly known, promissory estoppel. (Dkt. 42 ¶¶ 113-22); *See KFC Corp. v. Iron Horse of Metairie Rd., LLC,* 2020 WL 3892989, at *4 (N.D. Ill. July 10, 2020). In Illinois, promissory estoppel requires plaintiffs to establish plaintiff to prove that "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiffs [sic] reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Dumas v. Infinity Broad. Corp.,* 416 F.3d 671, 676–77 (7th Cir. 2005) (quoting *Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill.1990)). The Defendants contend the Statute of Frauds bars relief under detrimental reliance for Count II and the Plaintiffs failed to allege an unambiguous statement regarding all three agreements. (Dkt. 43 at 9-10).

First, for the reasons discussed above, Plaintiffs' promissory estoppel claim regarding the agreement rendered in Count II is not barred by the Statute of Frauds. Second, the Plaintiffs adequately pled the existence of an unambiguous promise to reimburse for expenses incurred under Contract A and Contract B. An unambiguous promise involves "a declaration that one will do or refrain from doing something specific." *Chehade v. Foley & Lardner, LLP,* 2024 WL 4953824, at *2 (N.D. Ill. Dec. 3, 2024) (citing *Hart v. Amazon.com*, Inc., 191 F.Supp.3d 809, 824 (N.D. Ill.

2016)). The Plaintiffs allege in multiple ways that the Defendants agreed to reimburse them for their expenses. (Dkt. 42 ¶ 115). The Plaintiffs state, regarding Project A and Project B, that the parties agreed that [Plaintiffs] would be paid $10,000 a month to perform design services and outsource materials and the Rodríguezes would reimburse Sykes for travel, travel lodging, materials, fabrics and other necessary items. (Dkt. 42 ¶¶ 50, 76). Finally, as discussed above, Mr. Rodriguez messaged Sykes that he would pay her "whatever money is owed," after the business relationship was terminated. (*Id.* ¶ 61). Here, the Plaintiffs sufficiently plead the Defendants' acts and communications created an unambiguous promise of reimbursement.

Further, Plaintiffs allege, Sykes "continued to travel to various parts of the country to outsource materials, fabrics and coming to Indiana and Southwest Florida when she resided in Illinois," all while incurring expenses that she then submitted to the Defendants for reimbursement. (*Id.* ¶ 117). Plaintiffs contend their reliance on this promise was foreseeable because the business relationship continued, the Defendants continued to pay her retainer and accept the benefits of their services. (*Id.* ¶¶ 118–20). As a result, the Plaintiffs allege they suffered financial "harm and damage" from the Defendants' failure to pay for their services. These allegations taken together are sufficient to establish a plausible claim for promissory estoppel. *See Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 566 (7th Cir. 2012) (concluding that a complaint, which "alleged a sufficiently clear promise, evidence of [the plaintiff's] own reliance [on that promise], and an explanation of the injury that resulted. . . . was enough to present a facially plausible claim of promissory estoppel"). Of course, as in *Wigod*, because Plaintiffs have successfully pled a breach of contract claim, including consideration, at this stage of the litigation there is "no gap in the remedial system for promissory estoppel to fill" and the claim is preserved in the alternative. *See id.* at 566 n.8.

**IV.    Count VI: Unjust Enrichment**

To plead unjust enrichment in Illinois, the Plaintiffs "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516-17 (7th Cir. 2011). While Illinois courts have indicated that sometimes unjust enrichment can be a standalone claim, where, as here, an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim. *Id.* In turn, a claim for unjust enrichment will stand or fall with the related claim. *Id*. For example if the benefit "was obtained by deceiving the plaintiffs," or "obtained by an inadvertent misrepresentation relied upon by the plaintiffs" then "the defendants' retention of the revenue might conceivably be to the plaintiffs' detriment." *Id.* at 519. In other words, the Plaintiffs' claim for unjust enrichment hinges on the Plaintiffs' ability to prove the Defendant represented they would reimburse expenses, failed to do so, and retained the benefit of the items Plaintiffs purchased.

Here, the Plaintiffs and Defendants both agree that this claim is dependent on a finding the Plaintiffs establishing Defendant made representations that they planned to reimburse expenses in Counts I, II, and III. (Dkt. 43 at 11; Dkt. 49 at 11). Because the Court denied the motion to dismiss on Counts I and II, the Defendants' motion to dismiss on this claim is likewise dismissed, but because the Court granted the motion as to Count III, the motion on this claim is granted with regard to the underlying conduct for Count III.

**V.    Count VII: Quantum Meruit**

Quantum meruit is a quasi-contract theory that compensates plaintiffs for acts of unjust enrichment where one party receives services without giving compensation. *Midcoast Aviation,*

14

*Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir.1990). The elements of quantum meruit are that: (1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving compensation in exchange will be unjust. *Id*. at 737. The Defendants argue first that the Plaintiffs fail to plead the Defendants received a measurable benefit, and second, they are not entitled to gain an advantage that was not contemplated by the parties to the transaction. (Dkt. 43 at 12). The Court does not find either of these arguments persuasive.

Defendants are correct that Plaintiffs must prove the services they performed were "of some measurable benefit to the defendant." *Cora v. Rancilio Macchine Per Caffe*, 2003 WL 21654152, at *7 (N.D. Ill. July 14, 2003). To plead a measurable benefit, the Plaintiffs must point to uncompensated services for which it would be unjust for the Defendants to retain without paying compensation. *Cora,* 2003 WL 21654152, at *7–8 (dismissing a quantum meruit claim when the plaintiff failed to identify uncompensated services). Plaintiffs allege they (1) provided valuable interior design and sourcing services for Defendants, including two residences, a warehouse, design schemes, selections, vendor coordination, and procurement logistics and (2) Defendants accepted and benefitted from Plaintiffs' services by using the designs/selections and advancing procurement/installation. (Dkt. 42 ¶¶ 129, 132). Plaintiffs plausibly allege a measurable benefit by pointing to uncompensated services retained by the Defendants who did not pay compensation.

Further, the Plaintiffs do not allege an advantage uncontemplated by the parties. The complaint alleges the Plaintiffs had a reasonable expectation to compensation for their services based on the "[p]arties' course of dealing and prior monthly retainers." (*Id.* ¶ 131). As discussed above, the Plaintiffs allege the parties contemplated compensation for, and reimbursement of,

expenses as shown by the Defendants acceptance of invoices and intermittent reimbursements. Thus, the motion to dismiss Count VII is denied.

Finally, given Plaintiffs' pleading deficiencies, the Defendants ask that the Second Amended Complaint be dismissed with prejudice. (Dkt. 43 at 5, 9, 10, 12). The Court declines to do so. "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original). Because this Court's prior ruling did not reach the merits, it will dismiss these counts without prejudice.

## **CONCLUSION**

For the reasons set forth above, the Defendants' Motion to Dismiss [43] is granted as to Count III and Count IV, and for Count VI in part without prejudice. If Plaintiff does not file a third amended complaint by June 27, the Court will dismiss these Counts with prejudice. Defendants' Motion to Dismiss is denied as to the rest of the Counts.

Virginia M. Kendall

Date: June 1, 2026

16